# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | **:** | |
| MAGAN DAVIDSON-NADWODNY | **:** | |
| | **:** | |
| v. | **:** | |
| | **:** | Civil Action No. CCB-07-2595 |
| WAL-MART ASSOCIATES, INC., et. al. | **:** | |
| | **:** | |
| | **:** | |

...o0o...

## <u>MEMORANDUM</u>

Now pending before the court is defendant's motion for summary judgment and plaintiff's motions for a cease and desist order and sanctions.[1] Plaintiff Magan Davidson-Nadwodny, a pro se litigant, has sued Wal-Mart Stores East, L.P. ("Wal-Mart"), Harry Anuszewski, Loretta Norkitis, and Sharon Sedler[2] (collectively "defendants"), for various common law torts and violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, related to alleged sexual harassment and retaliation in her workplace. The issues in this case have been fully briefed and no oral argument is necessary. For the reasons stated below, the defendants' motion for summary judgment will be granted in part and denied in part and the plaintiff's motions will be denied.

---

[1] The plaintiff has also moved for leave to file a surreply in response to defendant's motion for summary judgment. Local rules do not permit the filing of surreply memoranda unless specifically ordered by the court. Md. Local R. 105.2(a). Such an order is appropriate where "the moving party would be [otherwise] unable to contest matters presented to the court for the first time in the opposing party's reply." *Interphase Garment Solutions, LLC v. Fox Television Stations, Inc.,* 566 F. Supp. 2d 460, 467 (D. Md. 2008) (internal quotations and citation omitted). Although the plaintiff contends that "Defendants have raised new matters in their Response," she does not specify to which matters she is referring. (*See* Pl's Mot. for Leave to File Surreply ¶ 2.) As this court has not identified any new issues raised by defendants in their reply brief, the plaintiff's motion for leave to file a surreply will be denied.

[2] As Ms. Davidson-Nadwodny has not served Ms. Sedler with process, all charges against her will be dismissed.

## BACKGROUND

Ms. Davidson-Nadwodny's lawsuit stems from her allegations of sexual harassment and retaliation while working at Wal-Mart's Carroll Island Store. Ms. Davidson-Nadwodny alleges that she was sexually harassed by Ms. Sedler while working as a jewelry sales associate from November 9, 2005 until April 8, 2006.[3] According to Ms. Davidson-Nadwodny, Ms. Sedler stared at her chest every time they worked together at the jewelry counter. Ms. Sedler also allegedly would brush the palm of her hand against Ms. Davidson-Nadwodny's buttocks as she was passing behind her at least weekly and, at times, twice per shift. Ms. Davidson-Nadwodny further accuses Ms. Sedler of squeezing her hips from behind seven or eight times, scratching her back and tugging at her bra strap three or four times each and twice together, and touching her hair while calling it "soft and luscious" on one occasion. On another occasion, Ms. Sedler allegedly ran her hand along Ms. Davidson-Nadwodny's thigh while she was seated before removing it to pick up scissors that were on the floor nearby.

When Ms. Davidson-Nadwodny finally complained to Assistant Store Manager Norkitis in early January 2006, Ms. Norkitis promised her that she would stop the harassment and transfer Ms. Davidson-Nadwodny to the Lawn and Garden Department within two weeks.[4] After three to four weeks passed with Ms. Norkitis failing to follow up on her promises, Ms. Davidson-Nadwodny approached Store Manager Anuszewski about the harassment but was allegedly rebuffed and told to follow the chain of command. Ms. Davidson-Nadwodny filed a complaint with the Maryland Commission on Human Rights ("MCHR") in March 2006. In her deposition, Ms. Davidson-

---

[3] Ms. Davidson-Nadwodny has submitted an affidavit in response to the defendants' motion for summary judgment incorporating the facts and allegations in her complaint. (*See* Pl.'s Opp., Davidson-Nadwodny Aff. ¶ 5.) Thus I will rely on Ms. Davidson-Nadwodny's complaint, in addition to her deposition testimony, in ascertaining the facts.

[4] Ms. Norkitis denies that Ms. Davidson-Nadwodny complained to her about sexual harassment in January 2006. (*See* Def.'s Mot. for Summ. J., Anuszewski Decl. Ex. 4.)

Nadwodny stated that a male coworker, Lou, had also experienced unwelcome touching from Ms. Sedler. Lou reported to Ms. Davidson-Nadwodny that Ms. Sedler had grabbed his buttocks once and scratched his back.

Ms. Norkitis was soon replaced by Jessica Weber as Assistant Store Manager and Ms. Davidson-Nadwodny complained to Ms. Weber about the harassment. On April 8, 2006, Ms. Davidson-Nadwodny was transferred to a cashier position. Despite being assured that she would remain at the same pay scale in her new position, her pay was reduced.  Ms. Davidson-Nadwodny was transferred to the customer service desk on April 22, 2006, and her original pay rate was restored.  Ms. Davidson-Nadwodny claims that this reduction in pay, as well as Wal-Mart's denial of her breaks, constitute retaliation. Ms. Davidson-Nadwodny also asserts that Wal-Mart retaliated against her by refusing to pay for her medical expenses for injuries she sustained on the job. In addition, she claims that on June 21, 2006, she was subjected to a two-hour video-taped interrogation and accusations of cashing a counterfeit check in retaliation for her sexual harassment complaint with the MCHR. Ms. Davidson-Nadwodny resigned on June 29, 2006, citing the advice of her personal physician. (*See* Def.'s Mot. for Summ. J., Davidson-Nadwodny Dep. Ex. 6.)

Following the court's June 3, 2008 order granting in part the defendants' motion to dismiss, Ms. Davidson-Nadwodny's remaining claims are: (1) sexual harassment and retaliation under Title VII against Wal-Mart, (2) intentional misrepresentation against Mr. Anuszewski and Ms. Norkitis, (3) battery, and (4) negligent hiring or retention. The defendants have moved for summary judgment on all of Ms. Davidson-Nadwodny's remaining causes of action.

In addition, Ms. Davidson-Nadwodny has moved for a cease and desist order and sanctions against defendants. These motions relate to defendants' *ex parte* communications with Ms. Davidson-Nadwodny's treating physician, Dr. Sylvia Chang. Dr. Chang treated Ms. Davidson-

Nadwodny for the ailments she allegedly suffered as a result of the harassment and retaliation at work. Ms. Davidson-Nadwodny provided defendants with authorization to access most of her medical records, but did not grant defendants the authority to engage in *ex parte* communication with Dr. Chang. Defendants assert that these *ex parte* communications consisted only of phone calls to schedule Dr. Chang's deposition and the contact that Dr. Chang initiated with defendants' counsel to request a copy of Ms. Davidson-Nadwodny's medical records to review prior to the deposition. Each motion will be addressed in turn.

## ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Supreme Court has clarified that this does not mean any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable

inferences in her favor without weighing the evidence or assessing the witnesses' credibility,"

*Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the court also

must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims

and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotations omitted)

(quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*,

477 U.S. 317, 323-24 (1986)).

## I. Motion for Summary Judgment

### A. Sexual Harassment/Hostile Work Environment

To succeed on a claim for a sexually hostile work environment under Title VII, the

employee must show that the harassment was: 1) unwelcome, 2) based on [sex], 3) sufficiently

severe or pervasive to alter the conditions of employment, and 4) there was some basis for imposing

liability on the employer. *See Spriggs v. Diamond Auto Glass,* 242 F.3d 179, 183-84 (4th Cir.

2001). Although the first element is subjective, the other elements are objective, based on a

"reasonable person" standard. *Pueschel v. Peters*, 577 F.3d 558, 565 (4th Cir. 2009).

Wal-Mart first argues that Ms. Sedler's alleged conduct was not based on sex. Harassment

that occurs between two individuals of the same sex may still be considered sexual harassment

under Title VII. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998). In *Oncale*, the

Court listed three possible evidentiary routes by which plaintiffs alleging same-sex sexual

harassment may prove that the harassment occurred because of sex. *Id.* at 80-81. First, a factfinder

could infer that the harassment was motivated by sex if "there was credible evidence that the

harasser was homosexual." *Id.* at 80. Second, the plaintiff could show that she was "harassed in

such sex-specific and derogatory terms by another woman as to make it clear that the harasser [was]

motivated by general hostility to the presence of women in the workplace." *Id.* Third, the plaintiff

could "offer direct comparative evidence about how the alleged harasser treated members of both

sexes in a mixed-sex workplace." *Id.* at 80-81. The Court noted that regardless of the evidentiary

route the plaintiff chooses to follow, "she must always prove that the conduct at issue was not

merely tinged with offensive sexual connotations, but actually constituted '*discrimina[tion]* ...

because of ... sex.'" *Id.* at 81 (alterations and emphasis in original).

The Seventh Circuit has noted that the Court's list of possible evidentiary routes was

intended be instructive rather than exhaustive. *See Shepherd v. Slater Steels Corp.*, 168 F.3d 998,

1009 (1999). Thus several courts have held that a plaintiff may prove that harassment was based on

sex simply by offering evidence that the harassment was motivated by sexual desire, rather than by

proving that the harasser is of a particular sexual orientation. *See e.g., Dick v. Phone Directories

Co.*, 397 F.3d 1256, 1265 (10th Cir. 2005) (emphasizing that "*Oncale*'s first evidentiary route turns

on whether the harasser acted out of sexual desire," not whether the harasser identifies as gay or

lesbian); *Pedroza v. Cintas Corp. No. 2*, 397 F.3d 1063, 1068 (8th Cir. 2005) (describing *Oncale*'s

first evidentiary route as requiring the plaintiff to "show that the conduct was motivated by sexual

desire") (quoting *McCown v. St. John's Health Sys., Inc.*, 349 F.3d 540, 543 (8th Cir. 2003));

*Shepherd*, 168 F.3d at 1010 (holding that although incidents of same-sex harassment may not prove

that the harasser was gay, they suggest that the harasser was sexually interested in the plaintiff and

thus a factfinder may infer that the harassment occurred because of the plaintiff's sex).

Although the sexual nature of the alleged conduct is, on its own, insufficient to prove that

the harassment was based on sex, it is probative of the possibility that Ms. Sedler's conduct was

motivated by sexual desire. Ms. Davidson-Nadwodny alleges that Ms. Sedler ran her hand up her

thigh, felt her buttocks with the palms of her hands, snapped her bra strap, scratched her back,

stared at her chest, squeezed her hips, and stroked her hair. It would be reasonable for a factfinder to

infer that these actions are of a sufficiently intimate nature as to indicate an underlying sexual

attraction. *See Dick,* 397 F.3d at 1266 (observing that the harasser "touched, on more than one

occasion, one of the most intimate parts of [the plaintiff's] body—an act seldom carried out without

some sort of sexual motivation"). Furthermore, while it would be more difficult to prove that Ms.

Sedler's alleged conduct was motivated by sexual attraction in a workplace rife with sexual

vulgarity, there is no evidence in the record indicating that the store had a culture of inappropriate

touching or similar horseplay. *See Shepherd*, 168 F.3d at 1010-11 (explaining that sexually vulgar

behavior might not be harassment based on sex in an environment where such conduct is run-of-the-

mill, but could be where "the context of the harassment leaves room for the inference that the sexual

overlay was not incidental").

　　　As proof that Ms. Sedler's alleged conduct was not born of sexual desire, Wal-Mart offers a

declaration from Ms. Sedler stating that she has been married to a man for almost 15 years and has

never identified as bisexual or homosexual. (*See* Def's Reply Ex. 2 ¶ 4.) Such evidence, however,

does not eliminate the possibility that Ms. Sedler's alleged actions were motivated by some degree

of sexual attraction. *See Dick*, 397 F.3d at 1265 (noting "the possibility that an alleged harasser may

consider herself 'heterosexual' but nonetheless propose or desire sexual activity with another

woman in a harassing manner"); *Pedroza*, 397 F.3d at 1069 n.2 (explaining that the facts that the

female harasser had children and was in a long-term relationship with a man "tend to prove only

that [the harasser] was not strictly homosexual" and "do not preclude a jury from finding that [the

harasser] was motivated by some degree of homosexual desire towards [the plaintiff]").

　　　Wal-Mart also points to several same-sex harassment cases from other circuits in which

courts concluded that there was insufficient proof of the harasser's sexual motive to survive

summary judgment. *See Pedroza*, 397 F.3d at 1070-71; *Linville v. Sears, Roebuck & Co.*, 335 F.3d 822, 824 (8th Cir. 2003); *Davis v. Coastal Inter'l Sec., Inc.*, 275 F.3d 1119, 1126 (D.C. Cir. 2002). In *Pedroza* and *Davis*, however, the record contained substantial evidence that the harassment was motivated by the harasser's general hostility towards the plaintiff, rather than by the plaintiff's sex. *See Pedroza*, 397 F.3d at1069 (noting that the harasser and the plaintiff "had a generally antagonistic relationship with each other that preceded any allegedly harassing conduct"); *Davis*, 275 F.3d at 1123 (explaining that the plaintiff's "own testimony conclusively shows that [the harassers] were motivated by a workplace grudge, not sexual attraction"). Furthermore, in *Linville*, the harassing conduct itself, striking the plaintiff in the scrotum, was more probative of antagonism than sexual desire. *Linville*, 335 F.3d at 824.

Wal-Mart next argues that because Ms. Sedler also allegedly grabbed a male co-worker's buttocks and scratched his back, she could not have harassed Ms. Davidson-Nadwodny because of her sex. The possibility that Ms. Sedler may have also touched a male employee inappropriately, however, does not destroy Ms. Davidson-Nadwodny's sexual harassment claim.[5] As the Fourth Circuit noted in *Smith v. First Union Nat'l Bank*, the fact that an individual harasses both men and women does not mean that he or she could not have committed sexual harassment against a single employee because of his or her gender. 202 F.3d 234, 242 (4th Cir. 2000). In *Smith*, although both male and female employees complained about the harasser's conduct, the harasser targeted the plaintiff with "[e]xplicit and derogatory references to women" in nearly all of his harassing remarks to her. *Id.* Therefore, the court determined that the harasser "singled [the plaintiff] out for harassment because of her gender." *Id. See also Steiner v. Showboat Operating Co.*, 25 F.3d 1459,

---

[5] It should be noted that the only evidence in the record that Ms. Sedler harassed a male employee is based on hearsay. Ms. Davidson-Nadwodny stated during her deposition that Lou told her about the inappropriate touching, but neither side has presented a direct statement from Lou or any eyewitnesses confirming this out-of-court statement.

1463-64 (9th Cir. 1994) (finding that although the harasser was verbally abusive to both men and women, he used gender-specific and sexually vulgar language with women only and therefore his remarks toward female employees constituted sexual harassment). As in *Smith*, the nature of the harassment directed towards Ms. Davidson-Nadwodny and perhaps directed at Lou differed. Although Ms. Sedler allegedly touched both of their backs and buttocks, only Ms. Davidson-Nadwodny had her chest stared at, her hair and thigh touched, her hips squeezed, and her bra strap snapped. Thus the harassment experienced by Ms. Davidson-Nadwodny was more pervasive and gender-specific.

Although in *Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 262 (4th Cir. 2001), the Fourth Circuit cited the fact that the harasser made vulgar and offensive remarks to both male and female employees as an "imposing obstacle to proving that the harassment was sex-based," it noted that it did not "as a matter of law, preclude [the plaintiff's] claim." Furthermore, the harassment at issue in *Lack* consisted entirely of sexual comments; the harasser never touched the plaintiff or propositioned him. *See id.* at 258. In this case, however, Ms. Sedler is alleged to have offensively touched Ms. Davidson-Nadwodny, a form of harassment directed towards the plaintiff as an individual. This distinguishes this case from *Lack*, in which the harasser's remarks could be heard by many employees and were offensive to men and women alike.

In addition, the verbal nature of the harassment in *Lack* is less probative of harassment motivated by sexual desire than the physical harassment in the present case. This also distinguishes Ms. Sedler's alleged conduct from the harassment in cases such as *Dattoli v. Principi*, 332 F.3d 505, 506 (8th Cir. 2003) and *Pasqua v. Metropolitan Life Ins. Co.*, 101 F.3d 514, 515-16 (7th Cir. 1996), which similarly involved purely verbal harassment. Although Wal-Mart cited these cases for the proposition that harassment is never "because of sex" when an employee harasses both men and

women, the nature of the conduct alleged in these cases made this inference more difficult to draw in the first place. Similarly, *Scusa v. Nestlé U.S.A. Co.*, also cited by Wal-Mart for this proposition, concerned conduct that was rude and vulgar, but not sexual in nature. 181 F.3d 958, 962-63 nn.2-4 (8th Cir. 1999) (describing how the plaintiff received dirty looks, had her car scratched with a key, was cursed at, ignored, and hit on the head).  Thus even in the absence of evidence that the harassment in each of these cases was directed at both men and women, the plaintiffs likely would have been unable to prove, through *Oncale*'s first evidentiary route, that the harassment they endured was because of their sex.

Wal-Mart next argues that even if the harassment was based on sex, it was not sufficiently severe or pervasive to sustain a claim for sexual harassment. In determining whether conduct is sufficiently severe and pervasive, courts look to the "totality of the circumstances," including 1) the frequency of the discriminatory conduct, 2) the severity of the conduct, 3) whether the conduct was physically threatening, humiliating, or a mere offensive utterance, and 4) whether it unreasonably interferes with an employee's work performance. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998). Ms. Sedler's alleged touching was physically humiliating to Ms. Davidson-Nadwodny. Furthermore, her complaints about the harassment to her supervisors, as well as the physical harm she claims to have suffered as a result of the stress, demonstrates that the harassment was subjectively severe and pervasive to her. *See EEOC v. Central Wholesalers, Inc.*, 573 F.3d 167, 176 (4th Cir. 2009) (finding the plaintiff's complaints about her harassment and her statement that the harassment caused her emotional distress sufficient to create a triable issue as to whether the plaintiff subjectively believed the harassment to be sufficiently abusive or hostile).

Wal-Mart asserts, however, that the harassment was not objectively severe and pervasive. Although Wal-Mart seeks to minimize the harassment by pointing out the small number of times

Ms. Sedler touched Ms. Davidson-Nadwodny's back, bra strap, and thigh, "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993). The Court has noted that "[t]his is not, and by its nature cannot be, a mathematically precise test" and that "no single factor is required." *Id.* at 22-23. A reasonable jury considering the combined effect of each instance of Ms. Sedler's alleged touching, along with her stares, in a work area that required close physical proximity, could determine that this repeated physical contact created a work environment that was sexually humiliating and offensive to Ms. Davidson-Nadwodny. *See EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 318 (4th Cir. 2008) (noting that although "[a]ny of the [alleged] incidents, viewed in isolation, would not have been enough to have transformed the workplace into a hostile or abusive one…[w]e cannot…view the conduct without an eye for its cumulative effect"). Ms. Davidson-Nadwodny's claim that she experienced some form of unwelcome touching at least once a week for nearly six months, sufficient to cause her to lodge several complaints and to accept a transfer of her work assignment, could support a finding that the harassment was sufficiently severe and pervasive to constitute sexual harassment under Title VII.

Wal-Mart does not contest that the alleged harassment was unwelcome and the evidence is undisputed that it was. Furthermore, Wal-Mart does not raise any arguments as to its liability for Ms. Sedler's actions, if proved. Accordingly, Ms. Davidson-Nadwodny's sexual harassment claim will survive Wal-Mart's motion for summary judgment.

**B. Retaliation**

In order to state a prima facie case of retaliation, Ms. Davidson-Nadwodny must demonstrate that: (1) she engaged in a protected activity; (2) Wal-Mart acted adversely against her;

and (3) the protected activity and the adverse action were causally connected. *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). Ms. Davidson-Nadwodny claims that in response to her internally complaining about Ms. Sedler's behavior and filing a charge with the MCHR, Wal-Mart engaged in various retaliatory actions: (1) refusing to take action against Ms. Sedler or to transfer Ms. Davidson-Nadwodny to a different work area; (2) interrogating Ms. Davidson-Nadwodny in a harassing manner; (3) ignoring Ms. Davidson-Nadwodny after she collapsed at work; (4) spreading the contents of Ms. Davidson-Nadwodny's sexual harassment complaint to other Wal-Mart employees, with Ms. Norkitis laughing about the complaint with fellow employees; (5) providing false information to the MCHR; (6) transferring Ms. Davidson-Nadwodny to a position with a lower wage; (7) accusing Ms. Davidson-Nadwodny of accepting a fraudulent check; (8) denying Ms. Davidson-Nadwodny her breaks from work and failing to respond to her calls for manager assistance while she was helping customers; (9) allowing its attorneys to intimidate other Wal-Mart employees; and (10) harassing Ms. Davidson-Nadwodny about her work-related injuries and refusing to pay her medical costs and lost wages.

Regarding the first element, Ms. Davidson-Nadwodny engaged in protected activity when she filed a charge of harassment with the MCHR in March 2006 and when she complained internally about the harassment in January and June 2006. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998) (noting that opposing discriminatory practices in the workplace and making a charge of discrimination constitute participation in protected activity under Title VII). The next question, therefore, is whether Wal-Mart's alleged conduct rises to the level of an adverse employment action. Although Wal-Mart never fired Ms. Davidson-Nadwodny, adverse employment actions in the context of a retaliation claim are not limited to "ultimate employment decisions"; rather, they include actions that are "harmful to the point that they could well dissuade a

reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 67 (2006); *see also Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008) (in a Fair Labor Standards Act case, citing *Burlington* for the proposition that a Title VII retaliation plaintiff need not allege or prove an ultimate adverse employment action). Therefore, as long as Wal-Mart's conduct was harmful to Ms. Davidson-Nadwodny and would discourage a reasonable employee from filing future complaints, these alleged actions by Wal-Mart could serve as an adequate adverse action for the purposes of a retaliation claim.

Wal-Mart's decision to transfer Ms. Davidson-Nadwodny to a lower-paying position after she reported the harassment and its failure to compensate her for the difference in pay are sufficient to constitute adverse actions on their own. Although Wal-Mart restored Ms. Davidson-Nadwodny's pay rate two weeks later, this temporary reduction in pay could dissuade a reasonable employee from challenging workplace harassment. *See Burlington*, 548 U.S. at 73 (concluding that the plaintiff's indefinite suspension without pay constituted an adverse employment action even though the employer eventually compensated the employee with backpay because "[a] reasonable employee facing the choice between retaining her job (and paycheck) and filing a discrimination complaint might well choose the former"). Evidence that Wal-Mart denied reasonable breaks or assistance with her work could further support a finding[6] that Wal-Mart took retaliatory adverse action against Ms. Davidson-Nadwodny.

---

[6] Not all of Ms. Davidson-Nadwodny's alleged instances of retaliatory harassment could sustain a charge of retaliation. For example, her claim that Wal-Mart retaliated against her by refusing to compensate her for her work-related injuries fails because Wal-Mart has presented undisputed evidence that a separate company handled workers' compensation claims. Similarly, Ms. Davidson-Nadwodny has not shown that Wal-Mart provided false information to the MCHR, allowed its attorneys to act improperly, or spread the contents of her MCHR complaint to other Wal-Mart employees. In addition, Wal-Mart's allegation that Ms. Davidson-Nadwodny accepted a counterfeit check does not rise to the level of a materially adverse action because the charge was never pursued internally or with any law enforcement agencies. *See Wyckoff v. Maryland*, 522 F. Supp. 2d 730, 736 (D. Md. 2007) (finding that the plaintiff failed to show that her employer's filing of an administrative charge against her for damaging a vehicle amounted to a materially adverse action because she never explained how the charge was resolved or whether it affected her employment); *see also Dick*,

Finally, Ms. Davidson-Nadwodny must prove that Wal-Mart acted adversely towards her "*because* the plaintiff engaged in a protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)) (emphasis in original). Evidence of temporal proximity between the protected activity and the adverse action is sufficient to state a prima facie case of causality. *See Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 551 (4th Cir. 2006). The temporal proximity, however, must be "very close" to be treated as indirect proof of causation. *See Clark County School Dist. v. Breeden*, 532 U.S. 268, 273 (2001). In this case, Wal-Mart initiated Ms. Davidson-Nadwodny's transfer to a lower-paying position as a direct result of her complaints of harassment. Although Wal-Mart believed its actions to be an adequate remedy to these complaints, the fact that the transfer resulted in a lower wage for Ms. Davidson-Nadwodny could lead a reasonable jury to believe that Wal-Mart's decision to transfer the plaintiff to a lower-paying position, rather than to an equal-paying one, as she had requested, had a retaliatory motive. Furthermore, the alleged two-hour interrogation on June 21, 2006 came just three days after Ms. Ms. Davidson-Nadwodny submitted a letter to managers complaining of further harassment on June 18, 2006. In addition, the fact that Ms. Davidson-Nadwodny's MCHR complaint was the subject of the alleged interrogation is also relevant to causation. Therefore, as triable questions of fact remain,

---

397 F.3d at 1269 (concluding that an internal accusation of wrongdoing against the plaintiff which resulted in a police report did not constitute a retaliatory adverse action because no formal charges were filed against the plaintiff and she never stood trial). Wal-Mart's refusal to reprimand Ms. Sedler also does not support the plaintiff's retaliation claim because this failure to reprimand Ms. Sedler was ongoing and thus was not caused by any one protected activity. Furthermore, although Ms. Davidson-Nadwodny claims that Wal-Mart refused to transfer her to a different work area in retaliation for her complaints, Wal-Mart did eventually transfer her to a different position in the store, even after she had engaged in protected activity.  Finally, Ms. Davidson-Nadwodny's allegation that Wal-Mart supervisors ignored her after she collapsed at work does not support her retaliation claim because this incident is more of a minor slight than a materially adverse action. *See Burlington*, 548 U.S. at 68 (noting that "petty slights, minor annoyances, and simple lack of good manners" do not constitute materially adverse actions in the context of retaliation claims).

Wal-Mart's motion for summary judgment will be denied as to Ms. Davidson-Nadwodny's retaliation claim.[7]

### C. Intentional Misrepresentation

Ms. Davidson-Nadwodny also claims that Mr. Anuszewski and Ms. Norkitis committed the tort of intentional misrepresentation. According to Ms. Davidson-Nadwodny, Ms. Norkitis falsely promised her that she would stop Ms. Sedler from continuing to harass her and would transfer her away from Ms. Sedler to induce her to delay reporting the harassment to the EEOC and MHRC. Ms. Davidson-Nadwodny accuses Mr. Anuszewski of falsely telling her that their meeting was confidential to induce her to talk about her sexual harassment claim when she was uncomfortable doing so. In addition, Ms. Davidson-Nadwodny alleges that Mr. Anuszewski committed intentional misrepresentation by lying to the MCHR in response to her complaint.

To state a prima facie claim of intentional misrepresentation, or fraud, in Maryland, the plaintiff must demonstrate:

> (1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

---

[7] To the extent that Ms. Davidson-Nadwodny claims she was constructively discharged because of Wal-Mart's retaliatory actions, however, the evidence does not indicate that the adverse actions were sufficiently severe to support such a claim. To state a claim for constructive discharge, a plaintiff must show that the "employer 'deliberately made [his] working conditions intolerable in an effort to induce [him] to quit.'" *Heiko v. Colombo Savings Bank, F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006) (quoting *Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 272 (4th Cir. 2001)) (alterations in original); *but see Pennsylvania State Police v. Suders*, 542 U.S. 129, 147 (2004) (stating that the plaintiff "must show working conditions so intolerable that a reasonable person would have felt compelled to resign," but not requiring a showing of deliberateness). Under either *Suders* or *Heiko*, however, Ms. Davidson-Nadwodny has not demonstrated that the job reassignment, two-hour meeting, and other alleged adverse actions were so intolerable as to compel a reasonable person to resign. Therefore, any claim of constructive discharge that Ms. Davidson-Nadwodny may have asserted in her complaint will be denied.

*Alleco Inc. v. Harry & Jeanette Weinberg Found.,* 340 Md. 176, 665 A.2d 1038, 1047 (Md. 1995)

(quoting *Nails v. S & R,* 639 A.2d 660, 668-669 (Md. 1994)).

As previously noted by this court, Ms. Davidson-Nadwodny failed to state a claim for

intentional misrepresentation based on false statements made to the MCHR, (*See* June 3, 2008

Memorandum at 8 n.4), as Ms. Davidson-Nadwodny cannot establish that she relied upon or had the

right to rely upon Mr. Anuszewski's allegedly false representations to the MCHR.

Furthermore, Ms. Davidson-Nadwodny has not provided any evidence that Ms. Norkitis

intentionally or recklessly lied to her about ending the harassment and transferring her to the Lawn

and Garden Department, or that Ms. Norkitis made the representation for the purpose of defrauding

her.[8] According to Ms. Davidson-Nadwodny's allegations, Ms. Norkitis was initially receptive to

her complaints of harassment. Thus there is little reason to presume that Ms. Norkitis intended to lie

to Ms. Davidson-Nadwodny. In addition, Ms. Norkitis never told Ms. Davidson-Nadwodny not to

report the harassment to government agencies or to other supervisors. It seems unlikely, therefore,

that Ms. Norkitis's goal in promising Ms. Davidson-Nadwodny a transfer was to induce her to

remain silent.

Further, Ms. Davidson-Nadwodny has not provided any evidence that Mr. Anuszewski's

statement to her regarding the confidentiality of their meeting was actually false. Given the absence

of any factual support for Ms. Davidson-Nadwodny's contention that Mr. Anuszewski's statement

was false, a claim for fraud cannot be predicated on this statement. Defendants' motion for

summary judgment will therefore be granted as to Ms. Davidson-Nadwodny's claims for intentional

misrepresentation.

---

[8] Ms. Norkitis denies making this representation to Ms. Davidson-Nadwodny. (*See* Def.'s Mot. for Summ. J., Anuszewski Decl. Ex. 4.)

**D.  Battery**

Ms. Davidson-Nadwodny claims that Ms. Sedler committed the tort of battery against her through her offensive touching. As Ms. Sedler has not been served in this lawsuit and is therefore not a proper defendant in this action,[9] this court will interpret the claim as directed against Wal-Mart, under a theory of vicarious liability. Yet "[u]nder Maryland law, an employer is not vicariously liable for the torts of assault and battery based on sexual assaults by another employee as they are outside the scope of employment." *Green v. Wills Group, Inc.*, 161 F. Supp. 2d 618, 626 (D. Md. 2001); *see also Tall v. Bd. of Sch. Comm'rs of Baltimore City*, 706 A.2d 659, 670 (Md. Ct. Spec. App. 1998) (approvingly citing *Smith v. American Express Travel Servs. Co.*, 879 P.2d 1166, 1171 (Ariz. Ct. App. 1994) for its holding that "as a matter of law, employer was not vicariously liable for sexual assault and harassment of employee, as acts were outside the scope of employment"). Given that Ms. Sedler's alleged harassment and assault of the plaintiff were outside the scope of her employment, Wal-Mart is not vicariously liable for any battery that may have occurred. Accordingly, Ms. Davidson-Nadwodny's claim for battery will be denied.

**E.  Negligent Hiring or Retention**

Ms. Davidson-Nadwodny alleges that Wal-Mart was negligent in hiring or retaining Ms. Sedler once it was aware of her inappropriate conduct. As the claim of negligent hiring or retention is derived from the common law, however, it may only be predicated on common law causes of action. *See Hart v. Harbor Court Assocs.*, 46 F.Supp.2d 441, 444 (D. Md. 1999); *Demby v. Preston Trucking Co.,* 961 F. Supp. 873, 881-82 (D. Md. 1997). The underlying cause of action on which

---

[9] The defendants provided a Declaration by Ms. Sedler denying that she had ever touched Ms. Davidson-Nadwodny in any non-accidental manner. (*See* Def.'s Mot. for Summ. J., Sedler Decl. ¶ 6.)

this tort claim is based, sexual harassment, arises under Title VII, and therefore will not support Ms. Davidson-Nadwodny's claim for negligent hiring and supervision.

## II.   <u>Motions for Cease and Desist Order and Sanctions</u>

Ms. Davidson-Nadwodny correctly notes that *ex parte* communications between defense counsel and the plaintiff's medical provider are governed by the Health Information Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. §§ 1320d *et seq.* Yet HIPAA does not prohibit all *ex parte* communications between treating medical providers and adverse parties. Contact related to benign topics such as scheduling a deposition or trial testimony is beyond the purview of HIPAA's restrictions on the disclosure of medical records.

In this case, defendants assert that their *ex parte* communication with Dr. Chang related solely to the scheduling of Dr. Chang's deposition, not to the disclosure of any private medical information. Ms. Davidson-Nadwodny does not contest this. Thus these communications are not prohibited by HIPAA and are not subject to sanctions. Furthermore, when Dr. Chang contacted defendants' counsel and requested a copy of Ms. Davidson-Nadwodny's medical records for review prior to her deposition, defendants' counsel contacted and received permission from Ms. Davidson-Nadwodny before complying with Dr. Chang's request. (*See* Defs.' Opp. to Pl.'s Mot. for Cease and Desist Order, Ex. 4.) As defendants obtained these records from Dr. Chang's office pursuant to discovery, the sharing of these records with Dr. Chang was akin to sending Dr. Chang a courtesy copy of records to which she already had access rather than disclosing private medical information. Accordingly, defendants' *ex parte* communications with Dr. Chang did not violate HIPAA and Ms. Davidson-Nadwodny's motions for a cease and desist order and sanctions will be denied.

18

**<u>CONCLUSION</u>**

For the foregoing reasons, the defendants' motion for summary judgment will be denied in part and granted in part and plaintiff's motions for a cease and desist order, sanctions, and leave to file a surreply will be denied.  A separate Order follows.


<u>March 26, 2010</u>                                          _____/s/_____
Date                                                                   Catherine C. Blake
                                                                          United States District Judge